**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| APPLICATION OF CARGILL FINANCIAL | ) | |
| SERVICES INTERNATIONAL, INC. AND | ) | |
| CFSIT, INC. FOR AN ORDER PURSUANT TO | ) | Case No. 24-cv-5413 |
| 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR | ) | |
| USE IN FOREIGN PROCEEDINGS | ) | |

**DECLARATION OF BRANDON D. O'NEIL IN SUPPORT OF *EX PARTE*
APPLICATION OF CARGILL FINANCIAL SERVICES INTERNATIONAL, INC.
AND CFSIT, INC. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN
DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

I, Brandon D. O'Neil, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner at Allen Overy Shearman Sterling LLP ("A&O Shearman"), counsel to Applicants Cargill Financial Services International, Inc. and CFSIT, Inc. (the "Cargill Applicants") in this action.

2.      I make this Declaration in support of the *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proceedings (the "Application").

3.      I make this Declaration based on personal knowledge and my review of contemporaneous documents.  Where the facts and matters are stated as within my own knowledge, I know and believe them to be true.  Where they are not within my own personal knowledge, they are true to the best of my information and derived from the sources identified in my Declaration.

4.      I am a solicitor of the Senior Courts of England and Wales and am also an attorney licensed in the State of New York.

1

5.     I incorporate by reference paragraphs 5 through 84 of the Declaration of Ivan Kyselov, where I believe the facts and matters to be true to the best of my information and belief and such facts and matters are supported by contemporaneous documents and information that I have reviewed.

## I.     Overview and Factual Background Leading to the Arbitration

6.     This Application seeks discovery directly bearing on a pending criminal investigation in Poland (the "Polish Criminal Proceeding"), pending enforcement proceedings in England, Ukraine, and Poland (together, the "Enforcement Proceedings"),  and contemplated civil proceedings in the United Kingdom and/or Poland (together, the "Contemplated Proceedings"), all of which concern actions taken by Taras Barshchovskiy to avoid repaying approximately $124 million in debts owed to the Cargill Applicants.

7.     Through a series of assignment agreements and working capital facilities between 2015 and 2018, the Cargill Applicants extended financing amounting to just over $100 million to entities in the T.B. Fruit Group ("T.B. Fruit").

8.     In February 2015, the Cargill Applicants and T.B. Fruit executed a series of New York law-governed assignment agreements (the "Assignments").  Under the Assignments, the Cargill Applicants lent two Ukrainian T.B. Fruit companies, LLC Yabluneviy dar ("YabDar") and LLC TankTrans ("TankTrans"), approximately $67 million.

9.     The Assignments were guaranteed by a series of corresponding English law-governed guarantee agreements from Barshchovskiy, in his personal capacity, and certain T.B. Fruit entities (the "Assignment Guarantees").

10.     The Cargill Applicants advanced another approximately $35 million in working capital facilities to a Polish-domiciled T.B. Fruit entity, T.B. Fruit Polska sp. z o.o. S.K.A ("TBF

Polska 1"), in July and October 2015. At T.B. Fruit's request, this financing was novated to a Cyprus-domiciled T.B. Fruit entity, Francoso Corporation Limited ("Francoso"), in January 2017 pursuant to a Raw Material, Purchase and Inventory Receivables Agreement (the "RMPIR").

11.     As with the Assignments, Barshchovskiy and certain T.B. Fruit entities guaranteed the RMPIR through corresponding English law-governed guarantee agreements (the "RMPIR Guarantees").

12.     Barshchovskiy and T.B. Fruit agreed to give further forms of security as collateral for the RMPIR, including a pledge of all of the shares in Francoso (the "Cyprus Share Pledge") and a pledge over apple juice concentrate inventory held by a second Polish T.B. Fruit entity, TB Fruit Polska sp. z o.o. S.K.A. ("TBF Polska 2") (the "Polish Inventory Pledge").

13.     Each of the RMPIR, the RMPIR Guarantees, and the Assignment Guarantees contained arbitration agreements that were materially identical and provided for London-seated arbitration under the London Court of International Arbitration ("LCIA") Rules 2020.

14.     In late 2019 and early 2020 a series of defaults occurred. Specifically, YabDar and TankTrans entered into liquidation and bankruptcy procedures in Ukraine, and Francoso ceased repaying its commitments.

15.     The Cargill Applicants issued acceleration notices under the various financing agreements and payment demands under the corresponding guarantees.

16.     The Cargill Applicants held discussions in good faith in 2020 to attempt to try to negotiate a restructuring of the debts to facilitate repayment, but those efforts proved futile. *See* Declaration of Ivan Kyselov at ¶¶ 33–40 ("Kyselov Decl.").

## II.     The Cargill Applicants Commenced an Arbitration Against Barshchovskiy and T.B. Fruit Entities

17.     On January 18, 2021, the Cargill Applicants commenced arbitration proceedings against Barshchovskiy, Francoso, TBF Polska 1, and TBF Polska 2 (collectively, the "T.B. Fruit Debtors") before the LCIA (the "Arbitration").

18.     The Arbitration was originally commenced as 27 arbitrations, but these were subsequently consolidated into a single arbitration under the LCIA Arbitration Rules 2020.  The reference number of the Arbitration is 215018.

19.     Barshchovskiy and each of the T.B. Fruit Debtors were parties to the relevant finance agreements under which the Cargill Applicants brought claims in the Arbitration. Barshchovskiy was a guarantor of the RMPIR and a guarantor of six Assignments under six Assignment Guarantees.  Francoso was the borrower under the English-law governed RMPIR and was also a guarantor of six Assignments under six Assignment Guarantees.  TBF Polska 1 and TBF Polska 2 were each guarantors of the RMPIR under one RMPIR Guarantee, and guarantors of six Assignments under six Assignment Guarantees.

20.     The effect of this combination of obligations was that Barshchovskiy and each T.B. Fruit Debtor was severally liable for the full amount of the debt due under the Assignments and the RMPIR.

21.     The principal issue in the Arbitration was whether Barshchovskiy and the T.B. Fruit Debtors had a defense to the Cargill Applicants' debt claims.

22.     Barshchovskiy and the T.B. Fruit Debtors argued that the Assignments were void based on (i) fraud, (ii) illegality, (iii) misrepresentation, and/or (iv) inducement of breach of contract.

23.     At a merits hearing in September 2022, the Tribunal, consisting of David Owen KC, Tetyana Nesterchuk, and Drew Holiner, dismissed each of the T.B. Fruit Debtors' defenses due to "significant shortcomings."

24.     As to fraud, the Tribunal accepted the Cargill Applicants' argument that it is not a cause of action under English law and relied on allegations that the Tribunal already rejected.

25.     As to illegality, the Tribunal found that the defense lacked the requisite particularity.

26.     As to misrepresentation, the Tribunal concluded that this defense was "almost entirely lacking in details."

27.     Lastly, as to the inducement of breach of contract defense, the Tribunal found that the Cargill Applicants did not persuade, encourage, or assist YabDar and TankTrans to default on their contracts, and also lacked the intent to induce a breach.

28.     The Tribunal also rejected Barshchovskiy's objections to jurisdiction, which pertained to matters of Ukrainian law, but which were unsupported by any expert evidence.

29.     On December 14, 2022, the Tribunal rendered an award that decided on the merits in favor of the Cargill Applicants (the "Award").[1]  It held Barshchovskiy and the T.B. Fruit Debtors severally liable for the aggregate unpaid debt amounting (at that time) to $124,040,459.

30.     In issuing the Award, the Tribunal rejected the factual allegations made by Barshchovskiy and endorsed the factual background put forward by the Cargill Applicants, which was substantiated by "detailed" pleadings, witness statements, and documents.  In particular, it accepted that in January 2017, Barshchovskiy provided an English law-governed guarantee in

---

[1] The Award is a partial final award because the issue of costs remains open.  Otherwise, all issues in the Arbitration have been determined.

favor of the Cargill Applicants regarding Francoso's obligations under the RMPIR. It further accepted that in November 2018, Barshchovskiy provided English law-governed guarantees in favor of the Cargill Applicants regarding the obligations of TankTrans and YabDar under the Assignment Agreements. Moreover, following events of default under the RMPIR and Assignment Agreements in March 2020, it accepted that the Cargill Applicants served written demands on Barshchovskiy regarding the RMPIR and Assignment Guarantees in January and February 2020. Lastly, it found that despite these demands, Barshchovskiy failed to make any payment to the Cargill Applicants to settle amounts due under the guarantees.

31. Shortly thereafter, on January 13, 2023, counsel for Barshchovskiy sent my firm a January 11, 2023 Order of Justice Foxton, which provided notice of Barshchovskiy's intention to challenge the Award pursuant to section 68 of the U.K. Arbitration Act (the "Act").[2]

32. On January 30, 2023, my firm responded to that letter and requested that Barshchovskiy: (i) agree to provide security for the Cargill Applicants' costs in the sum of GBP 250,000 (as estimated at that point) promptly after any challenge under section 68 of the Act was filed; (ii) confirm the manner in which such security would be provided; or alternatively, (iii) provide any reasons he may have as to why he did not agree to provide security for the Cargill Applicants' costs.

33. On February 1, 2023, Barshchovskiy's counsel summarily rejected the request to provide security and stated that Barshchovskiy "will vigorously resist such application."

---

[2] The Order was sealed on January 12, 2023.

34.     My firm responded that same day, reiterating the request that Barshchovskiy confirm which assets he had available to meet any order for future costs made against him or alternatively why he considered that security for costs should not be provided.

35.     As of the date of this Declaration, I have not received a response to these questions.

36.     Based on information and belief, Barshchovskiy likely did not respond because he did not want the Cargill Applicants to know of his assets.

37.     On February 8, 2023, Barshchovskiy issued proceedings before the English courts, seeking to have the Award set aside pursuant to section 68 of the Act.  The claim number was CL-2023-000003 (the "Section 68 Claim").

38.     In the Section 68 Claim, Barshchovskiy complained of "serious irregularities" within the meaning of section 68(2)(a) and (c) of the Act.  He alleged that the Tribunal had failed to conduct the Arbitration fairly, or in accordance with the procedure agreed by the parties, such that he did not have a reasonable opportunity to present his case, which he claimed caused a substantial injustice to him.

39.     On March 21, 2023, the Cargill Applicants applied for summary dismissal of the Section 68 Claim pursuant to CPR 23.8(c) and paragraph O8.6 of the Commercial Court Guide (the "Dismissal Application").  The English High Court granted their application on May 25, 2023 and the Section 68 Claim was dismissed without a hearing.  Barshchovskiy was also ordered to pay the Cargill Applicants' costs of the Section 68 Claim.

40.     At the same time, the Cargill Applicants filed an application in the English High Court for security for its costs of defending the Section 68 Claim pursuant to section 70(6) of the Act (the "Security Application").  Barshchovskiy resisted this application.

41.     Following a hearing on April 21, 2023, Justice Cockerill granted the Cargill Applicants' Security Application and ordered Barshchovskiy to provide security for the Cargill Applicants' costs of the Section 68 Claim by May 12, 2023 in the sum of GBP 230,000, and to pay the costs of the Security Application.

42.     In summarily dismissing Barshchovskiy's case, the English High Court found that Barshchovskiy's challenge to the Award had "no real prospect of success."

43.     The English High Court's decision to grant the Cargill Applicants' Security Application took into consideration Barshchovskiy's duplicitous efforts to restructure T.B. Fruit entities and dissipate his personal assets and corporate interests to escape legitimate enforcement attempts following the Arbitration.  For instance, the Court explicitly noted the fact that there were no publicly available details about the transfers of proceeds from the sale of Barshchovskiy's wife's real estate.

44.     Barshchovskiy did not provide security as ordered, nor did he pay the Cargill Applicants' costs of the Section 68 Claim or the Security Application, which amounted to £230,000 and £85,000, respectively.

45.     Accordingly, on June 21, 2023, Justice Foxton further dismissed the Section 68 Claim on the additional ground that Barshchovskiy failed to comply with Justice Cockerill's order.

46.     Barshchovskiy has not challenged any of the orders of the English court.

47.     I have been informed that neither Barshchovskiy nor any of the T.B. Fruit Debtors has attempted to satisfy the Award.

## III.     Overview of the Polish Criminal Proceeding

48.     This Application relates in part to the Polish Criminal Proceeding, which concerns, *inter alia*, Barshchovskiy's involvement in a criminal group from December 2016 to January 2022

that committed various frauds, and the misappropriation of assets entrusted to T.B. Fruit. Barshchovskiy's subversive shifting of assets and control is therefore at the heart of the Polish Criminal Proceeding.

49.     The District Prosecutor's Office in Krasnik, Poland first initiated a criminal investigation on November 30, 2021 based on a crime notification from Polish farmers aggrieved by T.B. Fruit and Barshchovskiy.  The Polish prosecutors were initially focused only on these farmers' small claims.  However, as the investigation progressed and more evidence was obtained, it became clear that there was a possibility of a larger scale fraud whereby a criminal group— including Barshchovskiy and T.B. Fruit—acted to the detriment of significant creditors such as the Cargill Applicants.

50.     The criminal investigation phase at that time was considered an *in rem* preparatory proceeding.  During that stage, prosecutors act in the public interest and represent the state, rather than a particular party to the proceeding (including the injured party).  For instance, prosecutors collect evidence both for and against the subject for court review.  If there is reasonable suspicion that a crime has been committed, the prosecutor has a duty to commence the investigation.

51.     The investigation was transferred to the Regional Prosecutor's Office on January 19, 2022.

52.     Concurrently, on December 14, 2021, the Cargill Applicants submitted a crime notification to the Regional Prosecutor's Office in Warsaw, accusing Barshchovskiy and his associates of: (i) founding and participating in a criminal organization aimed at committing fraud; (ii) misleading the Cargill Applicants into entering into the Assignments and RMPIR, without intending to honor the repayment obligations; and (iii) preventing execution of the injunction ordered by the District Court of Kielce on June 11, 2021 by transferring or disposing T.B. Fruit's

9

assets to avoid repaying the Cargill Applicants and other creditors. The investigation's reference number is 3041-2.Ds.13.2022.

53. On June 14, 2022, the Regional Prosecutor's Office in Warsaw initiated an investigation into the third accusation but declined to pursue the other two claims based on a lack of jurisdiction. The refusal decision was made on July 25, 2022, and was affirmed on appeal on November 30, 2022.

54. The Cargill Applicants were identified as injured parties to the Warsaw prosecutor's investigation, thereby confirming their official status as parties to the investigation.

55. On October 31, 2022, the Warsaw prosecutor's investigation was transferred to the Economic Crime Division of the Regional Prosecutor's Office in Lublin, which included the broader criminal proceedings against Barshchovskiy. The investigation's reference number is 3020-2.Ds.1.2022.

56. In response, on November 9, 2022, the Cargill Applicants submitted a crime notification to the Regional Prosecutor's Office in Lublin, accusing Barshchovskiy and his associates of: (i) bringing T.B. Fruit and related entities into insolvency; (ii) preventing creditors from being repaid; (iii) securing the receivables of only one creditor (Ancile Investments Company), to the detriment of the other creditors; and (iv) committing money laundering by making suspicious payments for clothing to hide the criminal origins of his funds.

57. The Regional Prosecutor's Office in Lublin attached these accusations to their case file on November 18, 2022. In doing so, they reiterated the Cargill Applicants' status as injured parties, thereby reconfirming their official status as parties to the investigation.

58. As injured parties, the Cargill Applicants have significant participation rights. They are entitled to: (i) review the criminal file; (ii) receive copies of the prosecutors' decisions; (iii) be

informed of the investigation's process; (iv) submit evidence, including documents and requests to examine witnesses; and (v) participate in certain procedural acts, such as examining certain witnesses. They also have the right to receive damages following a conviction.

59.     On November 29, 2022, the Polish prosecutors decided to extend the investigation by nine months, lasting until August 30, 2023, and reiterated that their investigation included crimes committed against the Cargill Applicants.

60.     On December 29, 2022, the investigation was moved to the Provincial Prosecutor's Office in Lublin, under the supervision of the National Prosecutor's Office.

61.     On March 1, 2023, the Polish Prosecutor's Office in Lublin filed a decision to present criminal charges against Barshchovskiy, as well as Ivan Fedai, Dmytro Danyleychenko, and Oleg Mochaliuk, for participating in an organized criminal group and committing large-scale frauds from December 2016 to January 2022 in the provinces of Lubelskie, Swietokrzyskie, Mazowieckie, and other locations across Poland, with the aim of committing crimes that involved: (i) inducing the disposal of valuable property to the detriment of T.B. Fruit and Alivare's[3] contractors by misleading them about T.B. Fruit and Alivare's financial capabilities and intentions to perform their contractual obligations; and (ii) misappropriating valuable property entrusted to T.B. Fruit and Alivare on the basis of deposit contracts, sales contracts, and lease contracts. The victims of these fraudulent acts included individual and institutional agricultural producers,

_____

[3] Alivare Sp Z.o.o. ("Alivare") was incorporated in Warsaw, Poland in June 2021. In September 2021, T.B. Fruit rented its Annopol production plant to Alivare, who continued T.B. Fruit's operations there, including by employing T.B. Fruit's employees. According to files from the Polish Criminal Proceeding, Alivare failed to pay debts to at least 11 contractors, amounting to a minimum of approximately $170,000 (PLN 686,627.34).

international distributors of agricultural products, as well as Polish and international financial institutions such as the Cargill Applicants.

62. The Polish Criminal Proceeding remains active, as does the Cargill Applicants' involvement in it. For example, in November 2023, the Polish prosecutors asked the Cargill Applicants to provide information on the June 12, 2020 T.B. Fruit plant inspection, describe their relationship with Francoso, and propose witnesses. Several representatives of the Cargill Applicants have since been summoned as witnesses to appear in Lublin in March 2024 to testify in the Polish Criminal Proceeding.

63. The evidence sought by the Application could be used in the Polish Criminal Proceeding by showing the details of juice concentrate and related products, directly or indirectly imported, exported, or sold by T.B. Fruit entities, the organizational structure and operations of T.B. Fruit, and the flow of funds that are intended for T.B. Fruit entities, Barshchovskiy, and/or certain of his associates.

64. Crucially, evidence from Rahal Fruits & Flavors, Inc. ("Respondent"), one of T.B. Fruit's U.S. apple juice concentrate customers, could further show how T.B. Fruit is structured, controlled, and operated. This is important to understand given the historical fact pattern of shipments to the U.S. from T.B. Fruit in Poland and the dissipation that has since occurred in Poland (and elsewhere). In addition, some recent apple juice concentrate shipments have been transported through Poland.

65. This information also relates to the Polish Criminal Proceeding because it concerns T.B. Fruit Polish subsidiaries that have harmed the Cargill Applicants.

**IV.** **There is No Jurisdiction over Respondent in the Polish Criminal Proceeding**

12

66.     There is no other means absent this Application for the Cargill Applicants to obtain the evidence sought by the Proposed Subpoena in Respondent's possession.

67.     I am informed by colleagues in my firm's Warsaw office that the Polish Court would not have jurisdiction over Respondent and would dismiss any claim to obtain evidence from Respondent on that basis.

**V.      The Evidence to be Obtained from Respondent is Admissible in the Polish Criminal Proceeding**

68.     I am further informed by colleagues in my firm's Warsaw office that there are no proof-gathering restrictions in Polish courts preventing the acquisition of discovery from non-parties in the United States to a litigation before Polish courts.

69.     Indeed, I am informed that the evidence obtained through this Application will be fully admissible in Polish courts according to general rules of the Polish Code of Criminal Procedure Act.  The evidence would be obtained in accordance with the U.S. law and procedure, which is recognized and respected by the Polish courts as a valid and legitimate source of legal assistance in cross-border litigation proceedings.  U.S. law and procedure also provide safeguards and limitations to ensure that the discovery received is relevant, proportional, and respectful of the rights and interests of the parties and third parties involved.  Therefore, it should simply be a matter of course to use the evidence obtained through this Application in criminal proceedings in Poland, for example, by way of submitting email correspondence or other documents received in the U.S.

**VI.     Overview of the Enforcement Proceedings**

70.     This Application also pertains to the Enforcement Proceedings, which seek to recognize and enforce the Award in England, Ukraine and Poland.

71.     The information sought by the Subpoena could be used for purposes of post-judgment asset recovery in the Enforcement Proceedings.

## VII.   Enforcement Proceeding in England

### A.   Overview

72.     On November 22, 2023, the Cargill Applicants sought enforcement of the Award and requested judgment pursuant to it in the English High Court of Justice, Business and Property Courts of England & Wales, Commercial Court (KBD) (the "English Court") (the "English Enforcement Proceeding").

73.     On January 29, 2024, the English Court issued a judgment in the Cargill Applicants' favor and ordered enforcement of the Award (the "English Judgment").  *See Cargill Fin. Servs. Int'l, Inc. and CFSIT, Inc. v. Taras Barshchovskiy et al.*, Claim No. 2023-000822, High Court of Justice, Business and Property Courts of England & Wales, Commercial Court (KBD).

74.     After Barshchovskiy failed to appeal, the English Judgment in the amount of $123,940,459.55, exclusive of interest accruing, became final, conclusive, and enforceable against him on February 20, 2024.

75.     The Cargill Applicants are now able to pursue post-judgment recovery against Barshchovskiy.

### B.   The English Court Will Lack Jurisdiction Over Respondent

76.      In connection with the English Enforcement Proceeding, there is no other means absent this Application for the Cargill Applicants to obtain the evidence sought by the Proposed Subpoena in Respondent's possession.  The English Court would not have jurisdiction over Respondent, and I expect would dismiss any attempt to obtain the documents from Respondent on that basis.

77.     While the Cargill Applicants could theoretically apply to the English court pursuant to Section 34 of the Senior Courts Act 1981 and Part 31.17 of the Civil Procedure Rules for a third

party disclosure order requiring Respondent to produce the requested information, such an application would likely fail because English courts have held that absent exceptional circumstances, which I do not consider exist here, an English court would not have jurisdiction to order a foreign-domiciled entity to comply with a third party disclosure order, where, as here, the documents are not located in England. *See, e.g.*, *Alexander Gorbachev v Andrey Grigoryevich Guriev*, [2022] EWCA Civ 1270 (limiting the scope of jurisdiction to situations where the documents were located in England and Wales).

78.　　Respondent has its principal place of business and mailing address in the Northern District of Illinois, located at 2 Trans Am Plaza Dr Ste. 165, Oakbrook Terrace, Illinois 60181.

**C.　　The Evidence to be Obtained from Respondent is Admissible in English Courts**

79.　　There are no proof-gathering restrictions in English courts preventing the acquisition of discovery from non-parties in the United States to a litigation before English courts.

80.　　The evidence obtained through this Application will be fully admissible in English courts according to general rules of the English Civil Procedure Rules. The evidence would be obtained in accordance with the U.S. law and procedure, which is recognized and respected by the English courts as a valid and legitimate source of legal assistance in cross-border litigation proceedings. U.S. law and procedure also provide safeguards and limitations to ensure that the discovery received is relevant, proportional, and respectful of the rights and interests of the parties and third parties involved. Therefore, it should simply be a matter of course to use the evidence obtained through this Application in contemplated civil litigation in England, for example, by way of submitting email correspondence or other documents received in the United States.

**VIII.　Enforcement Proceeding in Ukraine**

　　**A.　　Overview**

15

81.     The Cargill Applicants are currently pursuing an enforcement action against Barshchovskiy in Ukraine (the "Ukrainian Enforcement Proceeding").

82.     On September 8, 2023, the Cargill Applicants filed a motion to recognize the Award against him in the Kyiv Court of Appeals, under case number 824/131/23.

83.     The Kyiv Court of Appeals granted the Cargill Applicants' recognition motion on February 19, 2024.

84.     Barshchovskiy appealed to the Supreme Court on March 25, 2024.

85.     The Cargill Applicants filed their response to Barshchovskiy's appeal on April 12, 2024.

86.     The Supreme Court rejected Barshchovskiy's appeal following a hearing held on May 2, 2024, and upheld the Kyiv Court of Appeals' ruling, thus granting the Cargill Applicants' enforcement motion against Barshchovskiy in full.

87.     As a result, the Cargill Applicants are seeking to enforce the Award through post-judgment recovery against Barshchovskiy's Ukrainian assets and, potentially, his former Ukrainian assets, which he had dissipated and with respect to which the bailiff may need to initiate a clawback court action as an extension of the Ukrainian Enforcement Proceeding.

**B.      The Ukrainian Court Will Lack Jurisdiction Over Respondent**

88.     In connection with the Ukrainian Enforcement Proceeding, there is no other efficient means absent this Application for the Cargill Applicants to obtain the evidence sought by the Proposed Subpoena in Respondent's possession.  I understand from Ukrainian co-counsel at the law firm of Integrites that the Ukrainian Court would not have jurisdiction over Respondent in relation to the Application, and I expect would not be able to issue an order that would be directly enforceable against Respondent in the United States.

16

C.     **The Evidence to be Obtained from Respondent is Admissible in Ukrainian Courts**

89.    I understand from Ukrainian co-counsel that there are no proof-gathering restrictions in Ukrainian courts preventing the acquisition of discovery from non-parties in the United States to a litigation before Ukrainian courts.

90.    The evidence obtained through this Application will be fully admissible in Ukrainian courts according to general rules of the Ukrainian Code of Civil Procedure. The evidence would be obtained in accordance with the U.S. law and procedure, which is recognized and respected by the Ukrainian courts as a valid and legitimate source of legal assistance in cross-border litigation proceedings. U.S. law and procedure also provide safeguards and limitations to ensure that the discovery received is relevant, proportional, and respectful of the rights and interests of the parties and third parties involved. Therefore, it should simply be a matter of course to use the evidence obtained through this Application in civil litigation in Ukraine, for example, by way of submitting email correspondence or other documents received in the United States or identifying assets located in Ukraine.

IX.    **Enforcement Proceeding in Poland**

A.     **Overview**

91.    The Cargill Applicants are also actively pursuing an enforcement action in Poland (the "Polish Enforcement Proceeding").

92.    They filed a motion to recognize the Award against Barshchovskiy, TBF Polska 1, and TBF Polska 2 before the Lublin Court of Appeals on November 8, 2023, with reference number I ACo 62/23.

93.    On December 1, 2023, TBF Polska 1 filed objections to the recognition motion.

94.    The Cargill Applicants filed their response to those objections on March 29, 2024.

17

95.    The Lublin Court of Appeals held a hearing on April 10, 2024 with respect to objections filed by TBF Polska 1, and TBF Polska 1 submitted a reply dated May 8, 2024.

96.    If the Court grants the Cargill Applicants' recognition motion, the Cargill Applicants will seek to satisfy the judgment through post-judgment recovery against any Polish assets controlled by Barshchovskiy.

**B.    The Polish Court Will Lack Jurisdiction Over Respondent**

97.    In connection with the Polish Enforcement Proceeding, there is no other means absent this Application for the Cargill Applicants to obtain the evidence sought by the Proposed Subpoena in Respondent's possession.  The Polish Court would not have jurisdiction over Respondent and would dismiss any attempt to obtain the documents from Respondent on that basis.

98.    According to Art. 248 § 1 of the Polish Code of Civil Procedure, a Polish court may order the production of specified documents in a person's possession that constitute crucial evidence to the resolution of a case, except for those containing classified information.  If the recipient of the request fails to produce the requested documents, the court may also impose a fine, pursuant to Article 251 of the Polish Code of Civil Procedure.  But a Polish court could not order such production against Respondent for at least two reasons.

99.    First, under Polish case law, Polish courts may only demand the production of specified documents, but cannot request (i) an unspecified group of documents or (ii) that the recipient search for documents.  *See* Polish Supreme Court decision dated 30 June 2022 r., case ref. no. I CSK 1409/22 ("Article 248 of the Polish Civil Procedure Code imposes the obligation to present an existing, specific document - constituting evidence crucial to the resolution of the case - rather than the creation of a new one. Consequently, it cannot serve as the basis for obligating a

third party, at the request of one of the parties, to create a document, prepare a list of specific information, or search for unspecified documents that could be used in the process.").

100.    Second, even if a Polish court ordered the production of specified documents against Respondent, such an order would be unenforceable for lack of jurisdiction.  Article 1103[7] of the Polish Code of Civil Procedure states that: "Cases heard in the proceedings, other than those listed in Articles 1103[1]-1103[6], fall under national jurisdiction when they concern: (i) obligations arising from a legal act that has been performed, or is or was to be performed, in the Republic of Poland; (ii) obligations not arising from a legal act that arose in the Republic of Poland; (iii) activities of the defendant's establishment or branch located in the Republic of Poland; (iv) claims for property rights, and the defendant has assets in the Republic of Poland or has property rights in the Republic of Poland of significant value in relation to the value of the subject matter of the dispute; (v) the subject matter of the dispute is located in the Republic of Poland; (vi) the estate of a person who, at the time of death, had a place of residence or habitual residence in the Republic of Poland."

101.    I understand from my colleagues in A&O Shearman Warsaw that none of these prerequisites apply to Respondent.  For instance, there is no existing obligation between Respondent and Cargill Applicants that could be invoked.  Moreover, Respondent has its principal places of business and mailing address in the Northern District of Illinois, located at 2 Trans Am Plaza Dr Ste. 165, Oakbrook Terrace, Illinois 60181.  There would likely be no link between Poland and Respondent.  Accordingly, the Polish court would not have jurisdiction over them.

102.    Furthermore, Article 310 of the Polish Code of Civil Procedure provides a process for securing evidence when there is a justified need to establish certain facts before trial, such as potential destruction of the evidence if production is delayed.  I understand from my A&O

Shearman Warsaw colleagues that Article 310 would not apply to Respondent, and therefore a Polish court would likely dismiss a motion by the Cargill Applicants to secure evidence from Respondent on this basis.

**C.    The Evidence to be Obtained from Respondent is Admissible in Polish Courts**

103.    I understand from my colleagues in my firm's Warsaw office that there are no proof-gathering restrictions in Polish courts preventing the acquisition of discovery from non-parties in the United States to a litigation before Polish courts.

104.    The evidence obtained through this Application will be fully admissible in Polish courts according to general rules of the Polish Code of Civil Procedure.  The evidence would be obtained in accordance with the U.S. law and procedure, which is recognized and respected by the Polish courts as a valid and legitimate source of legal assistance in cross-border litigation proceedings.  U.S. law and procedure also provide safeguards and limitations to ensure that the discovery received is relevant, proportional, and respectful of the rights and interests of the parties and third parties involved.  Therefore, it should simply be a matter of course to use the evidence obtained through this Application in contemplated civil litigation in Poland, for example, by way of submitting email correspondence or other documents received in the United States.

**X.    Overview of the Contemplated Proceedings**

105.    This Application also relates to the Contemplated Proceedings, which arise out of numerous efforts by Barshchovskiy—along with T.B. Fruit and other associates and/or co-conspirators—to hide, conceal, and obfuscate his assets to avoid repaying tens of millions of dollars in debts owed to the Cargill Applicants.

106.    Upon information and belief, Barshchovskiy undertook a number of such actions that give rise to claims in the U.K. and Poland.

107.    The Cargill Applicants have been investigating these matters extensively and have retained my firm and others as counsel in several jurisdictions for assistance.

108.    The Cargill Applicants have also conducted trade data analysis and compiled granular breakdowns of shipping relationships between each U.S. purchaser, including Respondent, and T.B. Fruit entities.

109.    The Cargill Applicants are seeking evidence of a connection between T.B. Fruit Ukrainian and Polish entities with Barshchovskiy, and other potentially associated persons, to establish that he remains the ultimate controller of T.B. Fruit and engaged in ongoing acts of dissipation and fraud in conjunction with others to the detriment of the Cargill Applicants.

110.    My firm has conducted legal research and advised the Cargill Applicants about the types of claims they can bring in the U.K. and Poland.  Without waiving privilege, I set out details of those potential claims below.

## XI.    Contemplated Claims in the U.K.

### A.    Causes of Action in the U.K.

111.    The Cargill Applicants are developing one or more civil claims against Barshchovskiy and others in the English High Court.

112.    The Cargill Applicants believe that Barshchovskiy has taken steps over several years to avoid creditors' enforcement attempts in at least two ways.  First, Barshchovskiy has embarked on a corporate restructuring of T.B. Fruit—without notice to or consent from the Cargill Applicants (as required)—to ostensibly distance himself from ownership and control of T.B. Fruit (the "Restructuring").  *See* Kyselov Decl. ¶¶ 58–66.  Second, Barshchovskiy has transferred money out of T.B. Fruit and especially from companies that are direct debtors of the Cargill Applicants (the "Transfers").  *See Id.*  Overall, these steps represent a willful evasion of debts owed by

21

Barshchovskiy to the Cargill Applicants and give rise to potential English law claims against Barshchovskiy and others.

113. To that end, the Cargill Applicants presently believe that the following English law claims exist against Barshchovskiy and others in England and elsewhere, either individually or in combination, arising out of or in connection with the Restructuring, the Transfers and/or Barshchovskiy's wider scheme of dissipating assets beyond the Cargill Applicants' reach: (i) transactions defrauding creditors under Section 423 of the Insolvency Act 1986; and (ii) the tort of unlawful means conspiracy (together, the "Contemplated English Claims").

114. First, under Section 423 of the Insolvency Act 1986, creditors may challenge transactions made by debtors, including foreign debtors, where those transactions were made at an undervalue and undertaken with the substantial purpose of putting assets beyond the reach of creditors. To pursue such a claim, the debtor need not be subject to formal insolvency proceedings or be insolvent at the time of the transactions. The debtor also does not need to become insolvent as a consequence of the transactions. The default applicable statutory limitation period is a minimum of six years.

115. The Cargill Applicants believe that the transactions underlying the Restructuring and/or the Transfers were made for no (or *de minimis*) consideration. Further, the Cargill Applicants believe that the Restructuring and/or the Transfers were conducted with the substantial purpose of putting assets beyond the Cargill Applicants' reach, thereby preventing legitimate enforcement attempts. This is because, *inter alia*, the Restructuring and Transfers were commenced (and then continued) after the Cargill Applicants took steps to accelerate and enforce the debt under the Assignments and the RMPIR.

22

116.     Second, the Cargill Applicants believe that Barshchovskiy, along with the entities and individuals involved in the Restructuring and/or the Transfers, conspired together to cause injury by unlawful means to the Cargill Applicants.  The Cargill Applicants believe that there was, at the very least, a tacit agreement or understanding between them to dissipate assets away from Barshchovskiy and other T.B. Fruit entities to evade the Cargill Applicants' legitimate enforcement attempts.

117.     Based on the Cargill Applicants' understanding at this time, the evidence is sufficient to raise an arguable case of guilty knowledge, as required to bring a claim.  For instance, the Restructuring and Transfers commenced shortly after service of the default and acceleration notices and after Barshchovskiy and Francoso signed a term sheet dated March 16, 2020 accepting that they were liable for substantial amounts under the Assignments and the RMPIR.

118.     As further support, Barshchovskiy transferred his interest in T.B. Fruit to his children, who have limited business experience.  It is more likely that they were temporarily installed as owners of T.B. Fruit due to their relation to Barshchovskiy, rather than as autonomous and independent entrepreneurs in their own right.

119.     Moreover, Barshchovskiy continues to hold himself out as being intimately connected to T.B. Fruit's operations.  For example, on March 30, 2023, Barshchovskiy was a panelist at a public business conference held in Kyiv, Ukraine, where he made remarks that directly contradicted his apparent distancing from T.B. Fruit, such as by repeatedly using the pronouns "we", "us" and "our" when speaking about T.B. Fruit.  The clear inference is that Barshchovskiy still remains fully in control of T.B. Fruit, with the assistance of his children and others as proxies.

120.     Therefore, it is clear that, as a consequence of the Restructuring and/or the Transfers, the Cargill Applicants suffered loss.  The overall scheme was operated by

23

Barshchovskiy and others to dissipate assets away from Francoso and other T.B. Fruit entities, and to put those assets beyond the reach of the Cargill Applicants immediately after significant amounts of money had become due to them. The Cargill Applicants have not recovered any amounts due under the Award and continue to suffer loss and damage as a result.

121. England is the proper place to bring any claims arising out of the Restructuring and Transfers. These claims relate to deliberate actions taken for the purpose of frustrating a London-seated LCIA Award, which itself relates to English law financing agreements. The Award has also since been converted into an English judgment, which allows the Cargill Applicants to enforce it against assets in England (to the extent there are any). Similar conditions have been held by the English High Court to establish the jurisdiction of the English courts, e.g., *Integral Petroleum S.A. v Petrogat FZE & Ors*, [2023] EWHC 44 (Comm).

122. The information sought in the Application is likely to be directly relevant to the Contemplated English Claims. The evidence sought by the Proposed Subpoena could be used to show: (i) Barshchovskiy's involvement in, and control of, T.B. Fruit, (ii) T.B. Fruit's organizational structure, funds, ownership, and assets, and (iii) T.B. Fruit's activities in the U.K., Ukraine, Poland, and elsewhere. Additionally, evidence relating to funds paid to Barshchovskiy or T.B. Fruit entities could demonstrate that there are or were funds available to meet amounts due under the Award, the willful evasion of which forms the central subject matter of the Contemplated English Claims.

123. The Cargill Applicants are also actively reviewing additional possible causes of action in England. In this regard, I note that the English courts recognize and acknowledge further types of tortious wrongdoing beyond those detailed in this Declaration. Evidence obtained through

24

the Proposed Subpoena may therefore satisfy additional ingredients of existing or future actionable tortious claims.

**B.    The U.K. Court Will Lack Jurisdiction Over Respondent**

124.    In connection with the Contemplated Proceedings, there is no other means absent this Application for the Cargill Applicants to obtain the evidence sought by the Proposed Subpoena in Respondent's possession.  The U.K. Court would not have jurisdiction over Respondent, and I expect would dismiss any attempt to obtain the documents from Respondent on that basis.

125.    While the Cargill Applicants could theoretically apply to the English court pursuant to Section 34 of the Senior Courts Act 1981 and Part 31.17 of the Civil Procedure Rules for a third party disclosure order requiring Respondent to produce the requested information, such an application would likely fail because English courts have held that absent exceptional circumstances, which I do not consider exist here, an English court would not have jurisdiction to order a foreign-domiciled entity to comply with a third party disclosure order, where, as here, the documents are not located in England.  *See, e.g.*, *Alexander Gorbachev v Andrey Grigoryevich Guriev*, [2022] EWCA Civ 1270 (limiting the scope of jurisdiction to situations where the documents were located in England and Wales).

126.    Respondent has its principal place of business and mailing address in the Northern District of Illinois, located at 2 Trans Am Plaza Dr Ste. 165, Oakbrook Terrace, Illinois 60181.

**C.    The Evidence to be Obtained from Respondent is Admissible in U.K. Courts**

127.    There are no proof-gathering restrictions in U.K. courts preventing the acquisition of discovery from non-parties in the United States to a litigation before U.K. courts.

128.    The evidence obtained through this Application will be fully admissible in U.K. courts according to general rules of the U.K. Civil Procedure Rules.  The evidence would be

25

obtained in accordance with the U.S. law and procedure, which is recognized and respected by the U.K. courts as a valid and legitimate source of legal assistance in cross-border litigation proceedings. U.S. law and procedure also provide safeguards and limitations to ensure that the discovery received is relevant, proportional, and respectful of the rights and interests of the parties and third parties involved. Therefore, it should simply be a matter of course to use the evidence obtained through this Application in contemplated civil litigation in the U.K., for example, by way of submitting email correspondence or other documents received in the United States.

**XII.** **Contemplated Claims in Poland**

    **A.** **Causes of Action in Poland**

129. The Cargill Applicants are also developing one or more civil claims in Poland (the "Contemplated Polish Claims"). These claims seek to unwind several asset transfers that the Cargill Applicants believe were deliberately made to avoid the reach of creditors, such as the Cargill Applicants.

130. Under the Polish Civil Code, if a third party gains a material benefit due to a debtor's transfer of assets, any of the debtor's creditors that suffer harm may bring a claim to unwind the transfer. This claim is called an Actio Pauliana ("Paulian Action").

131. I am informed by my colleagues in A&O Shearman Warsaw that the following factors are generally required for a Paulian Action in Poland, pursuant to Title X (Protection of the creditor in the case of the debtor's insolvency; Articles 527–34) of the Polish Civil Code: (i) a debtor consciously acted to a creditor's detriment in transferring an asset; (ii) the third party recipient of the asset knew of this, or could have known if it conducted due diligence; and (iii) the Paulian Action was initiated no more than five years since the date of the transfer. Thus, if, as a result of the debtor's legal action taken to the detriment of creditors, a person who is in a close

relationship with the debtor has obtained a financial benefit, it is presumed that this person knew that the debtor acted consciously to harm the creditors. § 4. Similarly, if, as a result of the debtor's legal action taken to the detriment of creditors, a financial benefit was obtained by an entrepreneur who has ongoing economic relations with the debtor, it is presumed that the entrepreneur was aware that the debtor acted consciously to harm the creditors. *Id.*

132. Where a defendant is not registered or domiciled in Poland, Polish courts may have jurisdiction under Art. 1103[7] paragraphs (1) through (4) of the Polish Code of Civil Procedure if their activities are sufficiently linked to Poland and/or the assets are sufficiently located within Poland. I am informed by my colleagues in A&O Shearman Warsaw that it is reasonable to conclude that Polish courts would have jurisdiction over the Contemplated Polish Claims.

133. The Contemplated Polish Claims focus on two potential Paulian Actions.

134. The first is a claim against Brzoskon sp. z o.o. ("Brzoskon"), a Polish entity in which Barshchovskiy was (and likely still is) the sole shareholder, and which the Cargill Applicants understand received approximately $18 million from Barshchovskiy around 2019. The Cargill Applicants believe that this transfer was a deliberate action taken to their detriment. The transfer was made to an entity that, being wholly-owned by Barshchovskiy, would more than likely have been aware of the harm to the Cargill Applicants. And the limitation period for bringing a Paulian Action has not yet passed. I am further informed by my colleagues in A&O Shearman Warsaw that the jurisdictional nexus to Poland is satisfied on the basis that the transaction was executed in Poland and Brzoskon resides in Poland.

135. The Cargill Applicants have reason to believe that Barshchovskiy's transfer of $18 million to Brzoskon was a deliberate action taken to their detriment. Specifically, following the various events of default under the financing documents as well as the failed restructuring,

Barshchovskiy was simultaneously arranging to transfer approximately $18 million to Brzoskon. Both he and Brzoskon (as wholly owned by him) knew or should have known that these funds could have been used to repay a substantial portion of the debt owed to the Cargill Applicants. Moreover, it was a term in the RMPIR that Barshchovskiy, as a guarantor, promised not to incur new indebtedness, provide any financing, dispose of, or transfer any assets without the Cargill Applicants' consent. Barshchovskiy did not seek their consent.

136. The Cargill Applicants suspect that Brzoskon plays a pivotal role in Barshchovskiy's current operations in Poland through T.B. Fruit's new structure. Therefore, evidence from Respondent relating to how T.B. Fruit is structured, controlled, and operated will be directly relevant evidence for the purposes of the Cargill Applicants' contemplated Paulian Action against Brzoskon.

137. The second Paulian Action that the Cargill Applicants are developing is against Ukrainian entities in T.B. Fruit that may have received machinery, industrial vehicles, and inventory from TBF Polska 1 and TBF Polska 2.

138. The Cargill Applicants reasonably believe that such equipment was removed from properties owned by TBF Polska 1 and transported to Ukraine as part of a restructuring. According to Polish bailiff reports, TBF Polska 1 was subject to multiple enforcement proceedings, which means that the relevant equipment should form part of its estate when the administrator makes a distribution to TBF Polska 1's creditors. As for the inventory, this was pledged as collateral to the Cargill Applicants pursuant to the Polish Inventory Pledge and should therefore have been used to repay the debts owed to the Cargill Applicants. Instead, the Cargill Applicants believe that this equipment and inventory was intentionally transferred to other parts of T.B. Fruit to avoid being seized by creditors and remain within Barshchovskiy's reach via his new group structure. I am

informed by my colleagues in A&O Shearman Warsaw that, depending on the circumstances concerning the fraudulent transactions, the jurisdictional nexus to Poland could at least be satisfied on the basis that the fraudulent transactions were executed in Poland.

**B.     The Polish Court Will Lack Jurisdiction Over Respondent**

139.     In connection with the Contemplated Proceedings, there is no other means absent this Application for the Cargill Applicants to obtain the evidence sought by the Proposed Subpoena in Respondent's possession.  The Polish Court would not have jurisdiction over Respondent and would dismiss any attempt to obtain the documents from Respondent on that basis, as described above in relation to the Polish Enforcement Proceeding.

**C.     The Evidence to be Obtained from Respondent is Admissible in Polish Courts**

140.     I understand from my colleagues in my firm's Warsaw office that there are no proof-gathering restrictions in Polish courts preventing the acquisition of discovery from non-parties in the United States to a litigation before Polish courts, as described above in relation to the Polish Enforcement Proceeding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: June 27, 2024                           /s/     *Brandon D. O'Neil*

                                                                    Brandon D. O'Neil